UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANNALIA MONTANY,<br><br>Plaintiff,<br><br>-against-<br><br>UNIVERSITY OF NEW ENGLAND, and SCOTT MCNEIL,<br><br>Defendants | Case No.<br><br>**COMPLAINT FOR DAMAGES CAUSED BY PERSONAL INJURIES, BREACH OF CONTRACT, AND REQUEST FOR INJUNCTIVE RELIEF**<br><br>**A JURY TRIAL IS DEMANDED IN RELATION TO ALL ISSUES SO TRIABLE** |

**PARTIES**

1. Plaintiff Annalia Montany is a citizen of the state of Hawaii.

2. Defendant University of New England is a corporation organized under the laws of the State of Maine and having its principal place of business in the State of Maine.

3. Defendant Scott McNeil is a citizen of the state of Maine.

**JURISDICTION AND VENUE**

4. Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. §1332(a)(2) (diversity of citizenship) because, as is more specifically shown in paragraphs 1 – 3 ABOVE, the plaintiff is a citizen of a different state than are each of the defendants, and the amount in controversy exceeds $75,000.00 exclusive of interests and costs.

5. Venue is proper in this District under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to plaintiff's claims occurred within this District.

**FACTS APPLICABLE TO BOTH COUNTS**

6. Throughout her entire academic life, plaintiff Annalia Montany has been a dedicated student by any measure. She has worked very hard and applied herself to her studies at every educational level making the personal and financial sacrifices necessary to obtain her higher education. She obtained her undergraduate degree from the University of Hawaii at Manoa, graduating in 2009. In 2009-2010 she remained at the University commencing her graduate studies, taking and completing a total of twelve graduate credits. She also completed certain additional studies that were prerequisite to commencing graduate study in Occupational Therapy.

7. As plaintiff went through her university and preliminary graduate studies in Hawaii, she became determined to pursue a career as an occupational therapist so that she could use that position and the skill she acquired to help people in need, working in the nation's health care system and bettering the lives of patients in need whether because they were ill, injured, or elderly. This became her dream.

8. In the spring of 2014, plaintiff was accepted to defendant University of New England, and specifically to its graduate health program known as the Westbrook College of Health Professions (hereinafter "UNE"). She chose this program, literally some six thousand miles from her home in Hawaii, because of its promise, based on the representations in its bulletins, on its website, and in its Graduate Student Handbook. All of these documents promised her a fair, professional, skilled, responsible, and safe environment in which to learn her chosen role in the healthcare field, namely being an occupational therapist.

9. Because of her record at the University of Hawaii, and the promise it showed, she had many options for her graduate studies and chose to attend UNE because of its promise. She therefore left behind other options, and traveled from Hawaii to Portland, Maine to begin her

studies.

10. From the beginning of her course of study at UNE, she excelled. Her first semester at UNE was during the Summer Term, in 2014. She took a full course loan of 14 credit hours comprising of five courses. Specifically she took the following courses and achieved the following results:

- Biopsychosocial Dimensions          3 course credits      A-
- Occupational Therapy Older Adults   2 course credits      B-
- Foundations of Occupational Therapy 3 course credits      B
- Functional Kinesiology/Anatomy      4 course credits      B
- Communications/Culture/Group Process 2 course credits     A

Obviously plaintiff was succeeding and was meeting and exceeding the study requirements.

11. However, during the Summer Term, plaintiff was required to pass a clinical test in one of her courses which required her to simulate the transfer of a patient from a bed to a wheelchair. The UNE instructor simulating the patient in this exercise was the very large defendant Scott McNeil. During the simulation, and while the relatively small and very much lighter plaintiff was holding him at his midsection by a belt strapped around his midsection, he was standing next to her. While in this position, McNeil started to feign unsteadiness on his feet. As part of his feigned unsteadiness, he leaned his weight into the comparatively slight plaintiff, requiring her to support much of his weight to hold him upright, which in turn caused pain in her back. The pain lasted for a full week.

12. As do most Colleges and Universities, UNE has a practice of inviting its students to evaluate their courses and their professors. These evaluations are encouraged by UNE to be candid because that way, the professors and instructors can learn and improve from the

comments involved.

13. Plaintiff filled out a course evaluation for the course in connection with which she had injured her back and criticized McNeil's method of testing by stating in substance that plaintiff did not think it was a good idea for the simulated transfers to include the simulated patient falling over on to the students while the students were still learning body mechanics. Plaintiff also wrote that as a result of the manner in which the test was done, her back was in pain for a week.

14. Moreover, apart from plaintiff's criticism, the practice of such feigned falls and indeed the practice of requiring students to attempt to lift patients, particularly much heavier patients, is negligent. Lifting or bearing the dead weight of a patient is known to be a frequent cause of injury to health care providers. Therefore, the practice engaged in by defendant McNeil with the acquiescence of UNE, was negligent in that it placed an unreasonable risk of injury upon the plaintiff. This unreasonable risk was aggravated because of large weight differential between defendant McNeil and plaintiff and was further aggravated because it was part of a course requirement that plaintiff had to perform and she, like the other students who had to perform it, were informed that if they failed that part of the coursework, they would fail the course and thus harm their academic standing. Accordingly, they were coerced by fear of academic failure into performing a procedure known by the medical community to be dangerous.

15. Despite the injury to her back described above, plaintiff achieved a solid grade point average during that Summer Term. Not only were her grades all As and Bs, she received no significant criticisms for any of her conduct or for any lack of professional demeanor.

16. During her second semester, the Fall Term of 2014, she likewise performed well as a student, and indeed better than she had the first term except for a course during which she was

again compelled to perform a critical test that again injured her back, this time more seriously, as described further below. Her grades for this term were as follows

| Course | Credits | Grade |
|---|---|---|
| Occupational Analysis | 3 course credits | A- |
| Biopsychosocial Dimensions Mental Health | 3 course credits | A- |
| Biopsychosocial Dimensions Adults | 2 course credits | B- |
| Occupational Therapy Interventions/Adult | 2 course credits | F |
| Applied UE Interventions | 2 course credits | A |
| Integrative Practice With Adults | 3 course credits | B+ |

17.   The F grade referred to above was a direct result of a severe personal injury she sustained during a clinical exam. The test was again a patient-transfer simulation. This test, however, involved the patient starting out in a simulated hospital bed and being transferred from that bed to a wheelchair. This test was intended to subject the student to handling more of the weight of the patient than had the test administered during the previous summer, described above in paragraph 14 of this Complaint, and was again by defendant McNeil with his much heavier weight.

18. This harmful and negligent test procedure was administered on October 7, 2014 just before the end of the Mid-Term of the Fall Term.

19. During this test, McNeil wore a belt around his midsection and plaintiff was instructed to hold onto it to help bear his weight while she assisted him in the wheelchair to bed transfer.  While she was doing so, McNeil abruptly dropped down, feigning a fall and causing much of his considerable weight to be abruptly borne by the much smaller and indeed comparatively slight plaintiff.  Plaintiff attempted to hold onto the belt so that she could prevent defendant McNeil from falling. She did so. However, the amount of his weight thus supported by

her was more that plaintiff should have been required to bear given their extreme weight and size differential. It was unreasonable and a lack of ordinary care for defendants to subject plaintiff to a test requiring her to bear this weight on fear of failing the course or injuring McNeil if she were to let go of the belt and allowing him to fall in order to thus avoid straining her back. Because she did not let go, she severely strained her back.

20. This time, because she had been subjected to much more of his weight that she could safely bear or withstand, the injury to her back was more severe. It was more painful and the pain endures as of the filing of this Complaint, impairing plaintiff's activities in the manner described further below.

21. Moreover, because she could not bear or withstand the excessive weight involved, she was given a failing grade on the clinical test. When this occurs under the procedure at UNE, the test is required to be retaken because it is part of the requirement for a passing grade in the course involved that this test be completed successfully.

22. Three days after sustaining this injury and while still suffering from it, plaintiff met with McNeil about retaking the test. She informed him that her back had been hurt during the test given just three days before and that she was still in pain. McNeil expressly acknowledged her statement about being in pain, indeed telling her that "if your back is still hurting, that is not good."

23. Despite being informed by plaintiff of her injury and his acknowledgment of it, McNeil rescheduled her to retake this physically demanding test for October 15, 2014, just five days later. Notwithstanding her pain, she felt compelled to take the test again. Because of the weakened condition of her back, she could not bear the weight of McNeil and thus failed the test again. The failure of this test is the only reason why she failed the course involved and she failed

the test only because her back was in pain.

24. That UNE and McNeil required plaintiff to retake this test, negligent as such a requirement was even with a healthy student not suffering back pain, was also negligent because it was administered while she was injured, an injury caused by the very test she was being required to retake. At a minimum, defendant McNeil should have either allowed her not to take the test or to postpone the taking of the test until her back had healed, or allowed her to simply withdraw from the course involved.

25. Instead, Plaintiff was given an F grade in the course. When she met with UNE's Student Development Committee, a Committee that UNE promises in its Student Handbook is intended to help students, and tried to explain the reason for her failure, not only did McNeil falsely state that he had not known of her injury, when in fact he well knew of it, but the Committee later, and without substantial basis, accused plaintiff of being "unprofessional." Thereafter she was dismissed from the school as a result of the F grade and because she attempted to explain that failure by explaining that the professor had injured her, causing the failure.

26. This failure was the direct result of and therefore proximately caused by the negligent way that the test involved was administered and the injury caused by it. As a result of this negligence and the injury plaintiff sustained as a result, plaintiff has and continues to suffer extreme back pain which, as of the filing of this Complaint, remains debilitating, causing an inability to work at most jobs, a loss of the quality of her life, medical bills, therapy bills, and pain and suffering.

27. Moreover, despite receiving multiple verbal and written notifications of the plaintiff's injuries and ongoing medical costs, the UNE administration systematically failed to properly

acknowledge the plaintiff's injury and assist with the plaintiff's ongoing treatment needs or medical costs.  Instead the administration ignored the plaintiff's injury and improperly dismissed the plaintiff from UNE, using the injury its negligence had caused as an unfair basis.

28. The failing grade and her being dismissed from the UNE graduate program are both reflected on her permanent transcript. With this transcript, reflecting her dismissal, plaintiff is unable to gain entrance to any other comparable Occupational Therapy program and therefore even when and if her injury is resolved medically, plaintiff will be forever prevented from achieving, or substantially diminished in her ability to achieve, her life's goal of becoming a highly sought after occupational therapist and thus will lose not only her life's dream, but the substantial salary that occupation would have earned her.

## COUNT I

### (Negligence)

29.  Plaintiff herein adopts by reference each and every allegation stated above as if specifically realleged herein.

30. The actions described above were negligent on the part of defendant McNeil.

31. At all times referred to above, McNeil was acting within the course and scope of his paid duties for UNE and therefore UNE is responsible for his actions and his negligence under the doctrine of *respondeat superior.*

32. Moreover, UNE is negligent because it knew or should have known that the test described above was unreasonably dangerous and thus was likely to cause harm in the circumstances described above.

33. The negligence of McNeil and of UNE as described above were the cause in fact and the proximate cause of plaintiff's injuries and of all the losses she has and will continue to

sustain as a result.

34. Plaintiff was damaged by that breach in amounts to be proved at trial, including lost tuition, lost wages, loss of her ability to join her chosen profession and loss of salary that she would have earned in that profession, pain and suffering, ongoing medical bills, and other expenses to be proved at trial.

## COUNT II

### (Breach of Contract)

35. Plaintiff herein adopts by reference each and every allegation stated above as if specifically realleged herein.

36. There existed between plaintiff and UNE a contract the terms of which were the provision of the Student Handbook.

37. Among the obligations UNE undertook when it took plaintiff into its program and took her tuition money was that it would deal with her in good faith and fairly and would not, in the administration of its rules and procedures, and otherwise in its treatment of her as a student, act arbitrarily and in bad faith.

38. In accepting the invitation of UNE to join its program, forego other programs available to her, travel from Hawaii to Maine to attend UNE and make the very substantial financial commitment required to make the tuition payments UNE charged her, plaintiff relied on UNE's implied promise of good faith and fair dealing, and that she would not be treated in bad faith and arbitrarily.

39. UNE, however, did not act in good faith and did not deal fairly with plaintiff. After subjecting her to a negligently-devised clinical test where she experienced pain, and having done so a second time where even more weight of McNeil was negligently imposed on the slight

plaintiff, UNE actually punished her by failing her in the course involved and by dismissing her from the program altogether.

40. This failure and dismissal were not caused by any conduct of plaintiff, not caused for any reason stated in the Student Handbook as a basis for receiving a failing grade or for being dismissed from the graduate program, were not her fault, and indeed were the fault of UNE and McNeil and caused by the negligent manner in which they administered the clinical testing described in this Complaint.

41. The failure and dismissal could have been easily avoided by allowing plaintiff, who was plainly a solid and capable student, to remain in the graduate program and to retake the course involved, taking it without being subjected to a the negligent test to which she had three times been subjected during her two terms at UNE.

42. Her dismissal from the UNE graduate program by UNE in these circumstances was arbitrary and capricious and was a breach by UNE of the covenant of good faith and fair dealing that is a part of the contract between plaintiff and UNE.

43. Plaintiff was damaged by UNE's conduct and that breach in amounts to be proved at trial, including lost tuition, lost wages, loss of her ability to join her chosen profession and loss of salary that she would have earned in that profession, pain and suffering, ongoing medical bills, and other expenses to be proved at trial.

## COUNT III

### (Injunctive Relief)

44. Plaintiff herein adopts by reference each and every allegation stated above as if specifically pleaded.

45. The "F" grade on plaintiffs transcript at UNE and the dismissal letter in her UNE file

are highly damaging to plaintiff. They have and will continue to cost plaintiff many professional opportunities.  Moreover, they have and will continue to cause plaintiff harm of a kind that cannot be fully compensated by money damages alone. The continuing presence of these records requires the plaintiff to disclose their content to anyone from whom she seeks work or to anyone she wishes to consider her academic performance for any reason. It is a stain on her reputation. The injury and damage from the presence of this cannot be fully or adequately measured or compensated for by money damages alone. It is wrongfully present at the center of her record and unless removed by order of this Court, will continue to stain plaintiff's record and thus cause continuing irreparable harm by damaging irreparably her professional reputation and ability to pursue a career in her chosen profession.

46. The F grade and the dismissal should thus be ordered removed from plaintiff's transcript and from any other place where it appears in her record.

## RELIEF

WHEREFORE PLAINTIFF hereby respectfully requests that this Honorable Court:

A.   That defendant UNE be enjoined and ordered to permanently remove from all parts of plaintiff's record maintained at UNE any reference to either the "F" grade or her dismissal from the program and that instead of those references, her record contain a statement stating all of her grades other than the failing grade and that, in place of the failing grade, her record reflect that as to the course involved, plaintiff sustained an injury while being tested and thus withdrew from the course and from the program in light of that injury.

B.   That defendants pay to plaintiff the money damages proved at trial;

C.   That defendants pay fees and costs of this proceeding as allowed by law; and

D.   That this Court order such further relief as this Court deems just.

## **JURY DEMAND**

Pursuant to Rule 38(b), Fed. R. Civ. Pro., plaintiff demands a jury trial on all issues so triable.

Dated: March 6, 2015

                                                RESPECTFULLY SUBMITTED,

                                                MARKHAM & READ
<u>John J.E. Markham, II</u>
John J.E. Markham, II
(Maine BBO No. 2674)
One Commercial Wharf West
Boston, Massachusetts 02110
Tel:  (617) 523-6329
Fax: (617) 742-8604
Email: jmarkham@markhamread.com