*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

*ANNALIA MONTANY,*          )
                            )
        *Plaintiff*      )
                            )
*v.*                        )      *No. 2:15-cv-89-JDL*
                            )
*UNIVERSITY OF NEW ENGLAND and*  )
*SCOTT McNEIL,*           )
                            )
        *Defendants*     )

### RECOMMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT

In this action brought by a former student against her teacher and school, the defendants move for summary judgment on all counts of the plaintiff's complaint, which sound in negligence and breach of contract. For the reasons that follow, I recommend that the court grant the motion.

## I.  Applicable Legal Standards

### A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014). "A dispute is genuine if 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." *Johnson v. University of P.R.*, 714 F.3d 48, 52 (1st Cir. 2013) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In

determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Johnson,* 714 F.3d at 52. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007) (quoting *Clifford v. Barnhart,* 449 F.3d 276, 280 (1st Cir. 2006) (emphasis omitted)); Fed. R. Civ. P. 56(c). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### B. Local Rule 56

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify

such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id.*

Local Rule 56 directs that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(f).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id.*; *see also, e.g., Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010); Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

## II.  Factual Background

The parties' statements of material facts, credited to the extent that they are either admitted or supported by record citations in accordance with Local Rule 56, with disputes resolved in favor of the plaintiff as the nonmovant, reveal the following.[1]

The University of New England ("UNE") is a private, non-profit university located in Maine.  Defendants' Statement of Facts ("Defendants' SMF") (ECF No. 28) ¶ 1; Plaintiff's Opposing Statement of Material Facts ("Plaintiff's Responsive SMF") (ECF No. 30) ¶ 1.  It offers

---

[1] Statements that are qualified are assumed to be admitted subject to that qualification, unless a qualification indicates otherwise.  To the extent that I have incorporated one side's qualification into the statement of the other, I have determined that the qualification is supported by the record citation(s) given.  I have omitted qualifications that are unsupported by the citation(s) given or are redundant.  To the extent that I have taken into consideration a denial of a statement, I have determined that the denial is supported by the citation(s) given.

an M.S. degree in occupational therapy ("MSOT") through its Westbrook College of Health Professions, Occupational Therapy Department.  *Id.*  The program leading to this degree begins in the summer and continues for six consecutive semesters or terms over a two-year period.  *Id.*

The program is demanding and exacting.  *Id.* ¶ 2.  Its students are expected to be present, prepared for class, and actively engaged as evidenced by critical thinking and meaningful participation.  *Id.*  Students may be dismissed from the program for a variety of reasons, including but not limited to unacceptable academic performance, failure to remove probation status, or a conduct violation.  *Id.* ¶ 3. In addition to course grades and clinical or field evaluations, student progression is monitored through regular instructor evaluation of assignments and performance, programmatic level review through regularly scheduled comprehensive student reviews, and Student Development Committee ("SDC") reviews as needed.  *Id.* ¶ 4.

The primary function of the SDC is to conduct reviews of student performance in order to assess whether a student can progress in a program, make a determination of student status, and make recommendations for action when a student has failed to maintain academic and professional standards, whether in class, clinical setting, or community.  *Id.* ¶ 5.  An SDC review may be recommended by any faculty, including the program director, or the faculty as a whole as an outcome of the comprehensive student review.  *Id.*

Following an SDC review, the program director will either approve the SDC's plan or recommend modifications to the SDC.  *Id.* ¶ 7.  At all relevant times, Jane Clifford O'Brien, Ph.D., OTR/L, was the program director.  *Id.*   A student has the right to appeal to the dean decisions affecting academic progression following the process outlined in the UNE Student Handbook.  *Id.* ¶ 8.  At all relevant times, Elizabeth Francis-Connolly, Ph.D., OTR, FAOTA, was the dean of UNE's Westbrook College of Health Professions.  *Id.*

At all relevant times, the SDC consisted of Kathryn Loukas, OTD, MS, OTR/L; Regi Robnett, Ph.D., OTR/L; Scott D. McNeil, OTD, MS, OTR/L; and Mary Elizabeth Patnaude. MS, OTR/L. *Id*. ¶ 6.

The plaintiff began the MSOT program in late May/early June 2014. *Id*. ¶ 9. In June 2014, the plaintiff received and reviewed the MSOT Handbook and the UNE Student Handbook. *Id.* ¶ 10. The UNE Student Handbook provides that its "provisions . . . do not constitute a contract, express or implied, between [UNE] and any applicant, student's family, or faculty or staff member" and that UNE "reserves the right to change the policies, procedures, rules, regulations, and information in this handbook at any time." *Id*. ¶ 11.

During the plaintiff's training at UNE, there was an emphasis on safety for students and patients. *Id.* ¶ 13. Students in the MSOT program were required to take certain lab courses designed to provide them with hands-on occupational therapy training. *Id*. ¶14. In these courses, a student must pass a mid-term practical exam and a final practical exam. *Id*. A practical exam requires that a student properly manage a patient in need of occupational therapy. *Id*. Instructors act as mock patients during these exams. *Id*. In order to ensure safe practice, students must achieve a minimum 80% competency to pass each practical exam. *Id*. ¶ 16.

Among other required classes, the plaintiff was enrolled in "OT 503L/Occupational Performance in Older Adults" ("OT 503L") in the summer of 2014. *Id*. ¶ 17. The plaintiff missed the first lab class for OT 503L on June 4, 2014, and, therefore, had to complete a make-up essay, to ensure that she was familiar with the material. *Id. ¶* 18. On July 23, 2014, the plaintiff failed an OT 503L Arthritis Hand Function Test "skills check" by scoring only 50. *Id*. ¶ 19. On July 29, 2014, the plaintiff scored below 80 on a skills check for OT 503L. *Id*. ¶ 20. A skills check is a "mini practical" undertaken by a student before a practical exam. *Id.* ¶ 21.

5

The MSOT program had "open labs" where students could practice with each other before their practical exams. *Id*. ¶ 22. The plaintiff never attended an "open lab" at UNE. *Id*. On July 31, 2014, the plaintiff was sent an email reminding her that she needed to have all immunizations up to date. *Id.* ¶ 23. She took her final practical exam for OT 503L on August 13, 2014. *Id*. ¶ 24. During the exam, Dr. McNeil acted as a patient with a hip injury. *Id*. The plaintiff scored below 80 on this exam and, therefore, failed. *Id*. ¶ 26. The final exam was stopped by Patnaude, who said "it's not safe." *Id*. ¶ 27. Among other issues, the plaintiff failed to lock the brakes on the mock patient's wheelchair. *Id*.

Patnaude said that the plaintiff did not understand the diagnosis of the patient, even though she was given the diagnosis ahead of time, and also was unprepared. *Id*. ¶ 28. She also said that the plaintiff set up the transfer of a patient who could not bear weight in an improper manner that would have required the patient to bear weight. *Id*. The plaintiff maintains that her back was hurt "a little bit" during the final practical exam because the mock patient "was unsteady on his feet." *Id*. ¶ 29. During the exam, she did not mention hurting her back. *Id*.

The plaintiff was not able to re-take the exam immediately. *Id*. ¶ 30. On August 19, 2014, the SDC met to discuss the plaintiff because she failed the final practical exam in OT 503L. *Id*. ¶ 32. The plaintiff was scheduled to re-take the exam on August 26 at 3:00 p.m. *Id*. ¶ 30. By that time, her back was not bothering her. *Id*. ¶ 31. She received the minimum passing score of 80. *Id*. ¶ 33.

On September 23, 2014, the plaintiff did not attend her tuberculosis skin test appointment. *Id*. ¶ 34.

In the fall of 2014, the plaintiff was enrolled in OT 515L/Interventions with Adults ("OT 515L") and OT 515/Biopsychosocial Dimensions of Adults ("OT 515"), both of which were

required courses.  *Id*. ¶ 35.  On October 7, 2014, the plaintiff did not reach the minimum passing score on her midterm practical exam for OT 515L.  *Id*. ¶ 36.  The plaintiff claims that she injured her back during this exam due to the mock patient's movements.  *Id*. ¶ 41.[2]  During the exam, she did not indicate that she had hurt her back.  *Id*.  The plaintiff maintains that she told Dr. NcNeil that her back hurt on October 10, 2014.  *Id*. ¶ 43.

On October 8, 2014, Patnaude advised Dr. McNeil, Dr. Loukas, Dr. Robnett, and Dr. O'Brien as follows: "I received a call from Annalia Montany, that she is not able to go to MMC today (she is due there in less than 2 hours), because she didn't realize her PPD was expired.  This is not the first example of [her] being unprepared.  In addition, I have documented incidences of poor time management.  I let her know that this was very unprofessional.  In addition, she displayed very poor performance on her Midterm exam for OT 515L.  I would like to refer her to the SDC for intervention."  *Id*. ¶ 42.  In response, Dr. McNeil stated that he shared Patnaude's concern and agreed with SDC involvement.  *Id*.  On October 15, 2014, Patnaude met with the plaintiff and informed her of the concerns expressed by faculty, such as lack of professionalism and poor clinical skills.  *Id*. ¶ 46.

On October 15, 2014, the plaintiff scored 72 on the retake of her OT 515L mid-term practical exam, which was below the passing score of 80.  *Id*. ¶ 47.  During this exam, the plaintiff did not indicate that she physically unable to take the exam or that her ability to pass the test was affected by a back injury.  *Id*. ¶ 49.  Because she failed the mid-term practical exam, the plaintiff failed OT 515L.  *Id*. ¶ 50.

---

[2] The plaintiff believes that Dr. McNeil, who acted as the patient in this exam as well as grading the plaintiff, and who weighed 210 pounds, deliberately did a "slipping and falling movement" while she was transferring him.  Plaintiff's Supplemental Statement of Facts ("Plaintiff's SMF") (ECF No. 30 beginning at 27) ¶¶ 84, 93; Defendants' Reply to Plaintiff's Supplemental Statement of Facts ("Defendants' Responsive SMF") (ECF No. 32) ¶¶ 84, 93.  She says that this movement caused her back injury.  *Id*. ¶ 84.

Following the failed exam, Dr. McNeil wrote that the plaintiff "continues to struggle with multiple clinical skills including providing instructions, clinical reasoning but most concerning are safety related issues including body mechanics, and safe management of medical lines . . . .  It is my opinion that [she] has not been progressing in her clinical skills compared to her classmates.  I have significant concerns about her poor safety awareness and insight into her areas needing improvement."  *Id*. ¶ 52.  Shortly thereafter, he informed the plaintiff that the matter was being referred to the SDC and that she would receive an F in the course.  *Id*. ¶ 53.

On October 27, 2014, the plaintiff met with the SDC to discuss her progress in the program.  *Id*. ¶ 54.  Even though she knew that her future at UNE was at issue, she did not report that she had injured her back or that her academic problems were due to a back injury.  *Id*.  At the time, the SDC was uncertain whether the plaintiff should continue in the program.  *Id*. ¶ 55.[3]  On October 27, 2014, the plaintiff also met with Dr. O'Brien.  *Id*. ¶ 56.  She stated that she had failed the practical exam because she did not have adequate practice time, although she admitted that she did not attend the open lab times available for practice.  *Id*.

The SDC was advised by Professor Robnett on October 30, 2014, that the plaintiff came to her with a plan to finish a course in a modified fashion, "as much for her own learning as to help her not fail the course."  Plaintiff's SMF ¶ 105; Defendants' Responsive SMF ¶ 105.

On November 12, 2014, the plaintiff sought medical treatment for her back injury for the first time.  Defendants' SMF ¶ 58; Plaintiff's Responsive SMF ¶ 58.  According to the physical therapist who treated the plaintiff for her back pain, she had a mild back strain that gave her some "nagging discomfort" which he expected to resolve fully in a few weeks.  *Id*. ¶¶ 59-60.  On

---

[3] Some members of the SDC thought that Patnaude should advise the plaintiff to drop OT 515L.  Plaintiff's SMF ¶ 100; Defendants' Responsive SMF ¶ 100.  On October 28, 2014, Dr. O'Brien advised Patnaude not to advise the plaintiff to withdraw.  *Id*. ¶ 101.

November 19, 2014, the plaintiff met with Patnaude to review a written exam in OT 515, in which she had received a failing score of 65.  *Id.* ¶ 61.  Ultimately, she received a B- in OT 515, the lowest possible passing score.  *Id.* ¶ 62.  On December 12, 2014, the SDC met again with the plaintiff.  *Id.* ¶ 63.  The members voted unanimously to recommend the plaintiff's dismissal from the program.  *Id.* ¶ 64.

After reviewing a report from the SDC and considering the matter, Dr. O'Brien concluded that the plaintiff should be dismissed from the program.  *Id.* ¶ 69.  By email dated December 19, 2014, Dr. O'Brien informed the plaintiff that the SDC had recommended her dismissal from the program and that she was "dismissed from the MSOT program effective immediately."  *Id.* ¶ 71. Dr. O'Brien also advised the plaintiff that she had seven days to file a written appeal of her dismissal to Dean Francis-Connolly.  *Id.*  By email dated January 5, 2015, Assistant Dean of Student Affairs Ray Handy advised the plaintiff that she had until January 8, 2015, to appeal her dismissal.  *Id.* ¶ 73.  On January 7, 2015, Handy again reminded the plaintiff that she had the right to appeal the dismissal decision to the Dean of the College through the University Academic Progression Appeal process.  *Id.* ¶ 74.

Dean Francis-Connolly did not receive an appeal from the plaintiff and, accordingly, by letter dated January 13, 2015, she confirmed the plaintiff's dismissal from the program and UNE. *Id.* ¶¶ 75[4]-76.  The plaintiff was advised that she could apply for readmission "after one year."  *Id.* ¶ 76.

---

[4] The plaintiff purports to deny this paragraph of the defendants' statement of material facts, but her denial does not address the stated facts, which are deemed admitted.  Plaintiff's Responsive SMF ¶ 75.

### III.  Discussion

### A.  Negligence (Count I)

The defendants contend that the plaintiff's negligence claim requires proof through expert opinion, and, because the plaintiff has not identified an expert witness, the claim must fail. Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Motion") (ECF No. 27-1) at 8-13.  The plaintiff responds that her negligence claim may be presented to a jury in the following language, without the need for expert testimony: "whether . . . it was the lack of ordinary care for a 210-pound defendant to first tell a slight wom[a]n, who needs his approval to pass the course involved, that she needs to hold him up by holding firmly to a transfer/gait belt around his mid-section, and then abruptly drop his weight in a simulated fall such that his weight is all on her, while she was been instructed to hold onto that belt."  Plaintiff's Memorandum in Opposition to Defendants University of New England and Scott McNeil's Motion for Summary Judgment ("Opposition") (ECF No. 29) at 3-4.[5]

There is a threshold problem with the plaintiff's argument:  not all of the critical facts included in her formulation of the question to be presented to a jury are properly before the court for consideration in connection with the plaintiff's opposition to the defendants' motion for summary judgment.  Specifically, there is no support in the parties' statements of material facts for the following factual assertions included in the plaintiff's statement of the Count I issue:

1.  The plaintiff is a "slight woman;"

2.  Dr. McNeil told the plaintiff to hold him up by holding firmly to the transfer/gait belt; and

---

[5] The complaint alleges that the University is liable for McNeil's negligence both because it knew or should have known that his actions were likely to cause harm and under the doctrine of *respondeat superior*.  Complaint ¶¶ 31-32.

3.   The plaintiff was instructed to hold onto that belt while Dr. McNeil dropped all of his weight on her.

Without record citations, these "facts" in opposition to the defendants' motion for summary judgment are not cognizable.  *See* Local Rule 56(f); *Curtis v. Ryder Truck Rental, Inc.*, No. 05-130-P-H, 2006 WL 662395, at *8 (D. Me. Mar. 13, 2006).

Moreover, even if the plaintiff's opposition to the motion for summary judgment on Count I had been properly supported by her statement of material facts, her contention that the issue of negligence presented by the circumstances of her claim is one of "simple" negligence which a jury may resolve by the application of mere common sense, Opposition at 10-14, is incorrect. Assuming *arguendo* that Count I does not assert a claim for educational malpractice,[6] as the plaintiff asserts, Opposition at 3, it nonetheless cannot stand alone as a garden-variety negligence claim.  The circumstances of the practical exam at issue were particular to the program of study of occupational therapy conducted by UNE.

Dr. McNeil would not have suddenly thrown all of his weight on the plaintiff, as she alleges, if he and the plaintiff had not been involved in a practical examination that was part of a required course in that program of study.  Excising from the negligence issue all references to those facts might render the issue one of ordinary or simple negligence, but only at the price of ignoring the practical examination being conducted.

Furthermore, the negligence and its harmful results to the plaintiff are not so obvious in this case as to lie within a jury's common knowledge, the circumstances under which expert testimony is not required despite the nature of the alleged negligence.  *See Cyr v. Giesen*, 108 A.2d

---

[6] Educational malpractice is a claim that has been rejected in the majority of states that have considered it, including this one. *Telluselle v. Hawaii Pacific Univ.*, Civ. No. 11-00343 BMK, 2012 WL 3800213, at *2 (D. Haw. Aug. 31, 2012); *Ambrose v. New England Ass'n of Schools & Colleges*, No. CIV. 99-0292-B, 2000 WL 1195363, at *4 (D. Me. Aug. 7, 2000).

316, 318 (Me. 1954) (cited by the plaintiff, Opposition at 11, 12).  There is no evidence in the summary judgment record that Dr. McNeil acted significantly differently in testing the plaintiff from the way in which he acted in his practical examination of all other students in the course.

The plaintiff asserts that *Searles v. Trustees of St. Joseph's Coll.*, 1997 ME 128, 695 A.2d 1206, is "quite apt here." *Id*. at 12.  It is not.  In *Searles*, the Maine Law Court held that college athletic coaches have a duty to exercise reasonable care for the health and safety of student athletes, and that breach of this standard "can be ascertained by a lay jury[.]"  1997 ME ¶¶ 5, 10, 695 A.2d at 1209, 1210.  However, the plaintiff in that case was a student basketball player who alleged that, despite knowing that he should not be playing basketball due to the condition of his knees, the coach of his college team nonetheless played him,  *id*. ¶ 7, 695 A.2d at 1209, thereby causing him permanent injury.  In the instant case, the plaintiff alleges that the defendants should have known that the manner in which her practical examination was conducted would cause her injury.  This is a much more specific allegation than that involved in *Searles*.  In addition, to the extent that the plaintiff contends that the defendants' duty was heightened by the previous back injury that she had suffered, it is undisputed that she did not inform Dr. McNeil, or anyone else who was an agent of UNE, that her back was compromised, or even that it "hurt," until after she had failed the examination at issue. The defendant's knowledge of the condition of the plaintiff's knees was central to the holding in *Searles*.

The factual circumstances in this case are closer to those presented by *Doe v. Yale Univ.*, 252 Conn. 641, 748 A.2d 834 (2000), where a medical resident alleged that the university was negligent in allowing her to contract HIV in the course of learning how to perform a certain procedure.  748 A.2d at 839.   The plaintiff made three unsuccessful attempts over a period of approximately two months to perform a procedure known as an arterial line insertion, the first

without supervision. *Id.* at 840-41. The fourth attempt, at which her supervisor was present at the plaintiff's request, was successful. *Id.* at 841. During her next attempt, which she was instructed to perform without supervision on a patient known to suffer from AIDS, the plaintiff stopped unexpected bleeding with her thumb, pricking her finger on a needle which was contaminated with the patient's blood. *Id.* She subsequently developed an HIV infection. *Id.*

The trial court denied the university's motion to dismiss on the theory that the plaintiff's claim was one for educational malpractice. *Id.* at 844. The Supreme Court of Connecticut upheld that ruling, setting forth its reasoning as follows:

> We recognize that, at first blush, the distinction between an educational malpractice claim . . . and a cognizable negligence claim arising in the educational context . . . may not always be clear. We conclude, however, that the distinction lies in the duty that is alleged to have been breached. If the duty alleged to have been breached is the duty to educate effectively, the claim is not cognizable. If the duty alleged to have been breached is the common-law duty not to cause physical injury by negligent conduct, such a claim is, of course, cognizable. That common-law duty does not disappear when the negligent conduct occurs in an educational setting. . . . The duty of an educator or supervisor to use reasonable care so as not to cause physical injury to a trainee during the course of instruction or supervision is not novel.

*Id.* at 847 (citations omitted).

However, the fact that the duty involved in *Doe*, as is the case presented by the plaintiff here, was the common-law duty to use reasonable care not to cause injury to a trainee did not make expert testimony on that point unnecessary. *Id.* at 862 ("the fact that we concluded . . .that the plaintiff's claim sounded in negligence, rather than educational malpractice, does not automatically mean that the jury may be left to its own devices in evaluating the reasonableness of the defendant's conduct."). The *Doe* court concluded that expert testimony was necessary in that case because the allegations presented to the jury were not within a juror's common sense or experience. *Id.* at 863.

13

The same is true here.  Whether a student studying occupational therapy is required to move patients heavier than herself as part of the job duties for which she is being trained, whether she must demonstrate at the plaintiff's stage of her training at the time of the practical exam at issue that she knows how to do this without coaching from an instructor or supervisor, and whether an instructor acting as a patient in such an exam may reasonably act in the manner described by the plaintiff are all questions that are not within an average juror's common sense, knowledge, or experience.  Similarly, whether injury is possible or even likely when a student performs the exam incorrectly is also a matter for expert opinion testimony.

The plaintiff has not identified a witness to provide such testimony.  Accordingly, the defendants are entitled to summary judgment on Count I.  *Flanders & Medeiros, Inc. v. Bogosian*, 65 F.3d 198, 206 (1st Cir. 1995).

## B.  Contract (Count II)

The defendants offer two arguments to support their contention that they are entitled to summary judgment on the contract count of the plaintiff's complaint: that the plaintiff failed to exhaust administrative remedies provided by UNE and, on the merits, the plaintiff cannot establish that her dismissal met the stringent standard applicable to such claims, essentially that it was the result of bad faith or ill will unrelated to academic performance, or was otherwise arbitrary or capricious.  Motion at 13-20.

### 1.  Failure to Exhaust

The defendants contend that the plaintiff's contract claim is barred by her failure to exhaust administrative remedies, specifically the appeal procedure set out in the student handbook.  Motion at 13-15.  The contract claim asserted in the complaint is based on the student handbook.  Complaint ¶ 36.  The provisions at issue are the following:

14

A student has the right to appeal to the Dean decisions affecting progression following the process outlined in the UNE Student Handbook.

University of New England/Westbrook College of Health Professions/Department of Occupational Therapy/Graduate Student Handbook/MSOT Class of 2016 (Exh. A to Defendants' SMF) (ECF No. 28-1) at 21.

A decision regarding academic progression reached by the individual faculty member, department chair or other designated academic administrator, hereafter referred to as the academic review officer, or a decision imposed by an academic review committee may be appealed by the accused student(s) or complainant(s) to the appropriate academic Dean within seven (7) business days of the decision. Such appeals shall be in writing and shall be delivered to the appropriate Dean and must be based on[:] 1) new evidence that could not have been presented to the academic review officer or committee at the time of the original decision, or 2) procedural errors in the original review process that had a substantial impact on or otherwise prejudiced the original determination. Students may also appeal a decision denying readmission to the University. Failure to file a written request for an appeal within the allotted time will render the original decision final and conclusive. Appeals will only be accepted by the Academic Dean's office if the student has exhausted all required procedural options at the instructor, departmental or other appropriate level(s).

University of New England/Student Handbook/for the 2014-2015 Academic Year (Exh. B to Defendants' SMF) (ECF No. 28-2) at 47.

The plaintiff agrees that she did not appeal to the appropriate dean from her dismissal from the occupational therapy program. Defendants' SMF ¶ 71; Plaintiff's Responsive SMF ¶ 71. She argues rather that she did not have any new information and could not cite any procedural errors in the process that led up to her dismissal, so she need not have gone through that exercise before bringing this action. *Id.* ¶¶ 75, 8; Opposition at 14. She cites no case authority in support of this argument.

In order to prevail on an argument that exhaustion of administrative remedies would be futile, which is apparently the theory underlying the plaintiff's argument on this point, the plaintiff must do more than present her own conclusion to that effect. The defendants contend that there

was in fact at least one item of new evidence that had not been presented to the SDC or to Dr. O'Brien: "her claim that her injury was caused by Dr. McNeil's 'conduct toward [her], in purposely slipping and dropping his weight on her.'"  Defendants' Reply Memorandum ("Reply") (ECF No. 31) at 3-4.  I cannot determine, from the parties' statements of material facts, that either side's factual assertion is properly supported.  Accordingly, summary judgment on Count II cannot be awarded on this basis.

The plaintiff's summary judgment presentation on the merits of her contract claim is based entirely upon the alleged "specific contractual promise" inherent in the "October 27 SDC plan." Opposition at 16.  That "plan" is set forth in the plaintiff's statement of material facts as follows:

> At the October 27, 2014 SDC meeting, the Committee set forth a plan for [the plaintiff] that included: (1) continue to audit OT 515L, but will not take part in practical exams; Exhibit C, p. D12.  "Depending on her GPA and progress in other courses this fall, she may return in Fall 2015 on academic probation to re-take OT 515L or be dismissed." Exhibit C, p. D12 [10/27/14 Loukas].  "She needs to keep her GPA [in] her . . . other courses to meet the 3.00 semester criterion." Id.  [The plaintiff] maintained a 3.07 GPA for the fall semester.  Exhibit X.

Plaintiff's SMF ¶ 107.  The defendants' response to this paragraph is a qualification: "*See* Exhibit C at D11-12, which sets forth the 'plan' for [the plaintiff]."  Defendants' Responsive SMF ¶ 107.[7]

If this is the only basis for her contract claim now presented by the plaintiff, the defendants' exhaustion argument does not appear to be applicable, because the "plan" has no provision for further administrative process.  On this basis too, summary judgment on Count II cannot be awarded.

## 2. The Merits

The defendants contend that they are entitled to summary judgment on a breach of contract claim arising out of the student handbook, Motion at 15-20, which is the only basis for the contract

---

[7] The "plan" is more detailed than what is presented in the plaintiff's statement of material facts.  MSOT 2016 Student Information Sheet (ECF No. 28-3) at D12.

claim alleged in the complaint.  Complaint ¶¶ 35-43.  The plaintiff responds that her claim based on the "October 27 Plan" remains viable, as well as a claim, apparently based on an implied contract, that the defendants acted unfairly, arbitrarily, and/or capriciously.   Opposition at 15-18.

The defendants understandably cry foul at the first of these arguments.  Reply at 5.  The complaint cannot reasonably be read to include in Count II a contract claim based on the "October 27 Plan."  A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.  *Associación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jiménez*, 659 F.3d 42, 53 (1st Cir. 2011) (quoting *Gilmour v. Gates, McDonald & Co*., 382 F.3d 1312, 1315 (11th Cir. 2004)).  This claim could only have been added via a motion for leave to amend the complaint, although by the time of the defendants' motion for summary judgment, the deadline for doing so as of right had long since passed.  *See Shuper v. Austin*, No. 2:14-cv-00317-JCN, 2015 WL 9592494, at *4 n.6 (D. Me. Dec. 31, 2015).

The defendants are entitled to summary judgment on the first contract claim identified by the plaintiff, that based on the "October 27 Plan.".

As to the second contract claim, based on an implied contract, Maine law does not recognize an implied duty of good faith and fair dealing running from institutions of higher education to students.  *Gomes v. University of Maine Sys.*, 304 F.Supp.2d 117, 131 (D. Me. 2004).  For that reason, the plaintiff cannot succeed on this claim.

Even if that were not the case, this alternate theory would fail to carry the day under the circumstances present here.  It is not entirely clear what specific action by the defendants is the one which the plaintiff deems arbitrary, unfair, or capricious.  In a footnote, she says that "even if there were no explicit contract promise [to allow her to continue as a student if she achieved a 3.0 average for the semester], it would be arbitrary and capricious to dismiss her and not in good faith."

Opposition at 16 n.6.  She also asserts that "[i]t is likewise not possible to summarily decide . . . whether or not UNE acted arbitrarily and capriciously by reneging on the SDC plan after [the plaintiff] had stayed in school for the remainder of the semester, taking UNE at its word, and doing what she had been told would avoid dismissal."  *Id*. at 17-18.

The infirmity in this argument is that the written "October 27 Plan" contains no promise by UNE to do anything.  Indeed, it states that "[d]epending on her GPA and progress in other courses this fall, she may return in Fall 2015 on academic probation to re-take OT 515L or be dismissed."  MSOT 2016 Student Information Sheet (ECF No. 28-3) at D12.  This sentence belies any interpretation that the Plan included a promise by UNE to let the plaintiff continue as a student if her GPA for the semester exceeded 3.0.  It does make clear that the plaintiff would not be enrolled for the spring semester, whatever happened.  The plaintiff has not provided any evidence that anyone from UNE at the meeting where the Plan was developed made a specific oral promise to her that she would not be dismissed if she complied fully with the Plan.

In addition, the plaintiff cites no authority for the proposition that her dismissal was nonetheless unfair, arbitrary, or capricious.  She cites authority for the basic proposition that colleges may not act in this manner when they have a contractual relationship with a student, but none of the cases that she cites is sufficiently close on its facts to provide persuasive authority for her contention that this claim may only be resolved at trial.  Most of the cases that she cites involve written materials, usually student handbooks, *see Mangla v. Brown Univ.*, 135 F.3d 80, 83 (1st Cir. 1998) (graduate school catalog); *Goodman v. President & Trustees of Bowdoin* College, 135 F.Supp.2d 40, 53 (D. Me. 2001) (student handbook); *Cloud v. Trustees of Boston Univ.*, 720 F.2d 721, 724 (1st Cir. 1983) (Provisional Student Code and Law School Disciplinary Rules); *Millien v. Colby Coll.*, 2005 ME 66, ¶ 11, 874 A.2d 397, 402 (student handbook), a basis which the plaintiff

18

has apparently abandoned for her contract claim in the instant case.  In addition, contrary to the plaintiff's suggestion, Opposition at 17, the question of whether a particular action by a defendant was arbitrary or capricious is frequently resolved on summary judgment.  *E.g., Protect Our Lakes v. United States Army Corps of Engineers*, No. 1:13-cv-402-JDL, 2015 WL 732655, at *2 (D. Me. Feb. 20, 2015).

In *Tobin v. University of Maine Sys.*, 59 F.Supp.87 (D. Me. 1999), one of the two remaining cases cited by the plaintiff, the defendant university contended that, even if an implied contract carrying a duty of good faith and fair dealing existed between the plaintiff applicant for admission and the defendant, there was insufficient evidence of a breach, and the court agreed.  *Id*. at 95.  The same situation is present in the instant case, where the plaintiff contends that the defendant breached an implied duty of good faith and fair dealing, but bases that contention only on the "October 27 Plan," which cannot reasonably be construed to promise the plaintiff that she would not be dismissed if she complied with all of its terms.

The decision to dismiss an enrolled student on an academic basis is a matter of academic judgment, *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225-26 (1985), which is accorded great deference by the courts.  *Mangla*, 135 F.3d at 84; *Tobin*, 59 F.Supp.2d at 95.  The decision to expel a student for poor academic performance is a matter confined to the professional judgment of the faculty and "not within the authority of a Court to review, barring outrageous conduct which rises to the level of a constitutional violation," *Bissessur v. Indiana Univ. Bd. of Trustees*, No. 1:07-CV-1290-SEB-WTL, 2008 WL 4274451, at *10 (S.D. Ind. Sept. 10, 2008) (student challenging dismissal from graduate school on basis of implied contract); *see also Knapik v. Mary Hitchcock Me. Hosp.*, 90 F.Supp.3d 292, 303-04 (D. Vt. Feb. 3, 2015).

### C.   Count III

Count III of the plaintiff's complaint seeks injunctive relief ordering UNE to "remove[] from plaintiff's transcript and from any other place where [they] appear[] in her record" the grade of F that she received in OT 515L[8] and her dismissal.  Complaint ¶ 46.  This count, and the relief that it seeks, are entirely derivative of Counts I and II.  If the defendants are entitled to summary judgment on those counts, summary judgment should be entered on this court as well.

### IV.  Conclusion

For the foregoing reasons, I recommend that the court **GRANT** the defendants' motion for summary judgment.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 24th day of June, 2016.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[8] Confusingly, the plaintiff states that "academic performance is not the point" and "[t]he F she received in McNeil's clinical course is also not disputed."  Opposition at 15.  If that is the case, it is unclear why she seeks its removal from her record.

20